UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANGELA T.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

21-CV-06068-LJV
DECISION & ORDER

---

On January 24, 2021, the plaintiff, Angela T. ("Angela"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] *Id.* On December 10, 2021, Angela moved for judgment on the pleadings, Docket Item 8; on May 6, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 9; and on May 26, 2022, Angela replied, Docket Item 10.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Angela applied for Supplemental Security Income ("SSI"), which is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both Disability Insurance Benefits ("DIB") and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Angela's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

**DISCUSSION**

I.     **THE ALJ'S DECISION**

On April 16, 2020, the ALJ found that Angela "ha[d] not been under a disability . . . since May 21, 2018, the date the application was filed." *See* Docket Item 7 at 32.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. § 416.920(a).  *See id.* at 19-32.

At step one, the ALJ found that Angela had not engaged in substantial gainful activity since filing her application.  *Id.* at 21.  At step two, the ALJ found that Angela suffered from several severe, medically determinable impairments: asthma, irritable bowel syndrome ("IBS"), abdominal hernias, anemia, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder ("PTSD").  *Id.* at 21-22.

At step three, the ALJ found that Angela's severe, medically determinable impairments did not meet or medically equal the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 22-24.  More specifically, the ALJ found that Angela's physical impairments did not meet or medically equal the requirements of listings 3.00 (respiratory disorders), 5.00 (digestive system disorders), and 7.00 (hematological disorders).  *Id.* at 22-23.  The ALJ likewise concluded that Angela's mental impairments did not meet or medically equal the requirements of listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), and 12.15 (trauma- and stressor-related disorders).  *Id.* at 23.  In assessing Angela's mental impairments, the ALJ concluded that Angela was: (1) moderately limited in understanding, remembering, or applying information; (2) moderately limited in

interacting with others; (3) moderately limited in maintaining concentration, persistence, or pace; and (4) moderately limited in adapting or managing herself.  *Id.*

The ALJ then found that Angela had the RFC[4] to perform "light work," as defined in 20 C.F.R. § 416.967(b), with the following additional limitations:

> [Angela] can occasionally perform all posturals; [must] avoid concentrated exposure to fumes, odors, dusts, gas[,] and poor ventilation; [is] able to perform simple[,] routine tasks with occasional interaction with the public and co[-]workers; and [can have] infrequent workplace changes gradually introduced/no production-paced work.

*Id.* at 24.

At step four, the ALJ found that Angela had no past relevant work.  *Id.* at 30.  But given Angela's age, education, work experience, and RFC, the ALJ found at step five that Angela could perform substantial gainful activity as a mail clerk,[5] marker II, or

---

[4] A claimant's residual functional capacity ("RFC") is the most she "can still do despite [her] limitations . . . in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id*

[5] This Court is aware of the Second Circuit's recent summary order in *Gibbons v. Commissioner of Soc. Sec.*, 2023 WL 3830774 (2d Cir. Jun. 6, 2023), finding that an ALJ must probe into the apparent conflict between an RFC limitation for simple, routine tasks and a job that requires a reasoning level of three, *see id.* at *2-3.  Although not argued as a point of error by Angela, the ALJ did not address the conflict between Angela's limitation to simple, routine tasks and her ability to work as a mail clerk, which requires a reasoning level of three.  *See* Docket Item 7 at 42-44.  Nevertheless, the Court finds this error to be harmless because the other two positions that the ALJ found Angela capable of performing—marker II and photocopy machine operator—require only a reasoning level of two, which is not inconsistent with Angela's limitation to simple, routine tasks.  *Cf. Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 178-79 (W.D.N.Y. 2018) ("Assuming *arguendo* that the ALJ erred in failing to explicitly incorporate moderate limitations with respect to complex tasks and decision-making into his RFC finding, and/or erred by failing to limit plaintiff to unskilled work, such error is harmless.  The four jobs identified by the vocational expert are all unskilled positions, which can be performed by individuals with moderate mental deficiencies."); *Akey v. Astrue*, 467 F. App'x 15, 17 (2d Cir. 2012) ("The ALJ's failure to include the limitation to unskilled and

photocopy machine operator.  *Id.* at 31; *see Dictionary of Occupational Titles* 209.687-026, 1991 WL 671813 (Jan. 1, 2016); *id.* at 920.687-126, 1991 WL 687992; *id.* at 207.685-014, 1991 WL 671745.  The ALJ therefore concluded that Angela was not disabled and did not qualify for SSI.  Docket Item 7 at 31.

## II.  ALLEGATIONS

Angela argues that the ALJ erred in two ways.  *See* Docket Item 8-1.  First, she argues that the ALJ's RFC determination was unsupported by substantial evidence because the ALJ inadequately considered her irritable bowel syndrome ("IBS").  *See id.* at 9-13.  Second, she argues that the ALJ failed to reconcile his RFC finding with the opinions of two consultative examiners, Harbinder Toor, M.D., and Adam Brownfeld, Ph.D.  *See id.* at 13-15.  This Court disagrees and therefore affirms the Commissioner's finding of no disability.

## III.  ANALYSIS

### A.  Angela's IBS

At step two, the ALJ found Angela's IBS to be a severe, medically determinable impairment.  *See* Docket Item 7 at 21.  At step three, however, he found that Angela's IBS did not meet or medically equal the criteria of any digestive system impairment under listing 5.00.  *Id.* at 22; *see, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 5.06

---

semi-skilled work is harmless because the only jobs the vocational expert identified were unskilled or semi-skilled.  As such, the ALJ did not err by relying on the vocational expert's testimony as evidence that [the plaintiff] could perform work existing in significant numbers in the national economy.").

5

(setting forth the objective criteria for disabling inflammatory bowel disease ("IBD")). And the ALJ crafted an RFC that did not include any limitation for the frequency with which she would need to use the bathroom during an 8-hour workday. *See id.* at 24.

Angela argues that this was error, pointing to times when she reported experiencing bowel movements 15-20 times per day. *See* Docket Item 8-1 at 11-12 (citing Docket Item 7 at 302, 838). This Court disagrees.

An ALJ must determine "the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." 20 C.F.R. § 416.929(a). That involves a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010); *see* 20 C.F.R. § 416.929(d). First, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment(s) [sic] that could reasonably be expected to produce an individual's symptoms." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). "Second, once an underlying physical or mental impairment(s) [sic] that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* An ALJ's evaluation of a claimant's subjective complaints is "entitled to great deference and therefore can be reversed only if [it is] patently unreasonable." *Pietrunti v. Dir., Off. of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (internal quotation marks and citation omitted); *see also Perez v. Barnhart*, 440 F. Supp. 2d 229, 235 (W.D.N.Y. 2006) (acknowledging that the

"patently unreasonable" standard applies in the Social Security context); *David C. v. Comm'r of Soc. Sec.*, – F. Supp. 3d –, 2023 WL 2379007, at *11 (W.D.N.Y. Mar. 6, 2023) (same).

The ALJ correctly followed the two-step inquiry here.  At step one, he found that Angela's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  Docket Item 7 at 25.  At step two, however, he concluded that Angela's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence . . . because they [were] not substantiated or corroborated by the evidence of record."  *Id.*  And the ALJ then explained the reasons behind his conclusion in considerable detail.

For example, the ALJ noted that Angela had "not generally received the type of medical treatment one would expect" for someone whose IBS caused her to have diarrhea up to 20 times per day.  *See id.* at 30. The ALJ observed that Angela had made "relatively infrequent trips to the doctor" and that when she did receive treatment, it was "essentially routine and/or conservative in nature."  *Id.*  The ALJ also noted Angela's repeated failure to follow up with her providers and her frequent noncompliance with treatment recommendations.  *Id.*  As a result, the ALJ concluded that Angela's IBS did not require further RFC restrictions and that his determination was supported by Angela's medical records.  *See id.* at 25-26, 28-30.  And those records indeed support what the ALJ found.

On April 26, 2011, Angela reported to Canal Park Family Medicine that a few months earlier she had seen a physician who told her that she had IBS and prescribed Imodium.  *Id.* at 206.   Angela told the provider that she stopped taking the Imodium,

however, because it was not helpful.  *Id.*  On November 11, 2011, Angela had a follow-up appointment for "ongoing abdominal cramping" and was referred to a gastroenterologist.  *Id.* at 208.  The patient note stated that "[Angela] likely has an element of IBS," and she was prescribed Dicyclomine once or twice a day as needed.  *Id.*

On April 4, 2012, Angela presented to the emergency department at Wayne-Newark Hospital with "abdominal pain . . . located . . . above and below the navel" and diarrhea.  *Id.* at 214.  She was discharged a few hours later in satisfactory condition.  *Id.* at 215.  In May 2012, Angela underwent a colonoscopy which showed that her colonic mucosa and terminal ileum appeared normal.  *Id.* at 217.  Her provider obtained random biopsies, with only one of twenty showing inflammation, and prescribed Lomotil.  *Id.* at 217-18.

Following her colonoscopy, Angela did not seek treatment for her IBS for almost a year.  *See* Docket Item 7 at 314.  On April 26, 2013, she reported to providers with Rochester Regional Health ("RRH") that she was having chronic diarrhea 5-10 times per day, impacting her ability to take public transportation.  *Id.* at 313.  She again was prescribed Imodium and Lomotil.  *Id.*  Almost a year later, on February 19, 2014, Angela returned to her providers at RRH and claimed that the Imodium had not provided her any relief, but she admitted never starting the prescribed Lomotil.  *Id.* at 315.  So her providers again prescribed Lomotil up to four times a day, and Angela was told to report back in two weeks.  *Id.* at 316.

But Angela did not follow up with her providers from RRH until March 17, 2015, more than a year later.  *See id.* at 317.  She claimed that she had missed her last

follow-up appointment "due to travel," and she reported that she was having "episodic bloody stools and infrequent bouts of constipation."  *Id.*  Angela requested a "letter from her case worker indicating that she [was] a current patient of [RRH] as well as a work-release letter."  *Id.*  Angela declined to undergo another colonoscopy, and her provider prescribed Mesalamine in the interim.  *Id.* at 318.

About five months later, on August 3, 2015, Angela reported having bloody stools more than 15 times a day and that she had stopped taking her Mesalamine after two months because she did not think it was working.  *Id.* at 326-27.  She was instructed to restart Mesalamine and to schedule a colonoscopy.  *Id.* at 328.  But Angela never scheduled the colonoscopy and did not follow up until March 7, 2016.  *Id.* at 329-30.  At that time, she reported that the frequency of her bowel movements had improved to 10 times a day or fewer.  *Id.* at 329.  She was prescribed a 10-day course of Xifaxan, but her providers again recommended another colonoscopy if the Xifaxan did not provide relief.  *Id.* at 330.

On April 11, 2018, Angela again reported improvement in her IBS with a regimen of Cholestyramine and Lomotil.  *Id.* at 302.  She said that she had ten or fewer bowel movements per day with no bleeding or cramping.  *Id.*  Providers suggested that Angela undergo an esophagogastroduodenoscopy to "exclude any upper tract pathology that could be a factor," but she again declined to follow up.  *Id.*

Based on this history, the reasons provided by the ALJ for discounting Angela's subjective complaints to her providers, including the frequency with which she needed to use the restroom, were hardly "patently unreasonable."  *Pietrunti*, 119 F.3d at 1042.  Angela herself provided the only evidence in the record about how often she needed to

9

use the bathroom, and the ALJ appropriately weighed those reports against Angela's failure to consistently seek treatment and follow her providers' recommendations.  *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983); *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012).  And because Angela did not appear at her hearing before the ALJ or show cause why when given the opportunity to do so, Docket Item 7 at 19, her insistence that the ALJ did not properly weigh her subjective complaints rings hollow, *see Hearings, Appeals and Litigation Law Manual* I-2-4-25 C.2.b., 1993 WL 643012, at *6 (Jun. 24, 2021) (claimant waives right to appear if counsel is present at hearing and claimant later does not show good cause for failure to attend).  *See also Miller v. Comm'r of Soc. Sec.*, 784 F. App'x 837, 838-39 (2d Cir. 2019) (affirming ALJ's decision based on evidence in record after claimant failed to appear at hearing).

What is more, Angela does not point to any evidence other than her own subjective complaints suggesting that she needed an additional limitation for using the bathroom.  For that reason as well, the ALJ did not err in not including additional limitations in the RFC.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Here, Smith had a duty to prove a more restrictive RFC, and [he] failed to do so.").  So the ALJ properly considered Angela's IBS, and his decision not to include a limitation for using the bathroom was supported by substantial evidence.

As for the opinion evidence about Angela's IBD, on March 5, 2020, Karin J. Dunnigan, M.D., of RRH completed a medical source statement.  *See id.* at 1117-22.  Dr. Dunnigan had not seen Angela since 2016, but she noted that Angela had received treatment for "prominent IBS" from 2012 through 2016.  *See id.* at 1117, 1122.  Dr. Dunnigan said that she could not rule out the possibility that Angela's symptoms were

10

caused by "mild Crohn's colitis" or IBD, and she described Angela's reported symptoms as including diarrhea "up to 10x daily." *See id.* at 1117-18. Dr. Dunnigan concluded that those symptoms were severe enough to "interfere with [the] attention and concentration needed to perform even simple work tasks" on a frequent basis but that she could perform low-stress jobs. *Id.* at 1118. Dr. Dunnigan opined that Angela would sometimes need to take unscheduled breaks during an 8-hour workday, but she could not assess the frequency or duration of these unscheduled breaks. *Id.* at 1120.

The ALJ found the opinion "less persuasive" because "Dr. Dunnigan was unable to opine any physical functional limitations." *Id.* at 30. Moreover,

> Dr. Dunnigan's portion of [the] opinion regarding attention and concentration is not very persuasive, because this physician had not seen [Angela] since 2016 with only intermittent treatment, did not articulate the basis for [her] opinion[,] and did not specify any duration of such symptoms. Most significantly, the record lacks corroborative contemporaneous treatment records of severe symptoms, which further renders this opinion less persuasive.

*Id.* So the ALJ appropriately analyzed Dr. Dunnigan's opinion and gave good reason for his assessment.[6]

In sum, the ALJ adequately and reasonably considered Angela's subjective complaints, the medical records, and the opinion evidence in addressing her IBD. The RFC he fashioned therefore was consistent with the record and not error. *See* 20 C.F.R. § 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for

---

[6] Moreover, Dr. Dunnigan's opinion that Angela could work in low-stress jobs, Docket Item 7 at 1118, lends further support to the ALJ's conclusion that Angela was not disabled.

meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

### B. Dr. Toor's and Dr. Brownfeld's Opinions

Angela also argues that because the ALJ improperly addressed Dr. Toor's and Dr. Brownfeld's opinions, the RFC determination was unsupported by substantial evidence. *See* Docket Item 8-1 at 13. More specifically, she says that the ALJ's RFC determination "failed to accommodate all of the limitations assessed by Drs. Toor and Brownfeld . . . [and] provided no explanation for the omission of these limitations." *Id.* at 14. For example, she says that the RFC's failure to incorporate Dr. Toor's finding that her pain and headaches could interfere with her routine, and Dr. Brownfeld's moderate limitation in regulating emotions, controlling behavior, and maintaining well-being, was error. *See* Docket Item 8-1 at 14. Again, this Court disagrees.

It is true that an "RFC determination must account for limitations" imposed by a claimant's severe and non-severe impairments. *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012); *see* 20 C.F.R. § 416.945(a)(2). But the RFC does not necessarily need to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019). In determining the RFC here, the ALJ appropriately considered Angela's severe and non-severe impairments and adequately addressed the opinion evidence.

Dr. Toor examined Angela on July 6, 2018. *See* Docket Item 7 at 729-33. During Dr. Toor's examination, Angela described a "history of migraine headaches since childhood." *Id.* at 729. She reported that she sometimes gets migraines many times a

month and that these migraines sometimes last for a few hours.  *Id.*  Angela also reported that "[l]ight and noise bother her during headaches."  *Id.*

Dr. Toor opined that Angela had a moderate limitation in standing, walking, sitting, bending, lifting, and carrying, and he instructed her to "avoid irritants or other factors which can precipitate asthma."  *Id.* at 732.  He also concluded that Angela's pain and headaches, as well as complications from her colitis or abdominal hernia, could interfere with her routine.  *Id.* at 732-33.

Dr. Brownfeld examined Angela on the same day.  *See id.* at 735-38.  Dr. Brownfeld opined that Angela was moderately limited in: (1) interacting adequately with supervisors, co-workers, and the public; (2) sustaining concentration and performing a task at a consistent pace; (3) sustaining an ordinary routine and regular attendance at work; and (4) regulating emotions, controlling behavior, and maintaining well-being.  *Id.* at 737.  He also opined that Angela was markedly limited in applying complex directions and instructions.  *Id.*  But Dr. Brownfeld concluded that Angela's psychiatric and cognitive problems did "not appear to be significant enough to interfere with [Angela's] ability to function on a daily basis."  *Id.*

The ALJ found that "Dr. Toor's and [Dr.] Brownfeld's opinions are mostly persuasive," Docket Item 7 at 29, and he used their opinions to inform his RFC determination.  For example, consistent with Dr. Toor's opinion, the ALJ precluded Angela from working in environments with poor ventilation and "concentrated exposure to fumes, odors, dusts, [and] gas."  *Compare id.* at 24 (ALJ's decision), *with id.* at 728 (Dr. Toor's opinion).  Similarly, consistent with Dr. Brownfeld's opinion, the ALJ limited Angela to only simple, routine work with occasional interaction with the public and co-

workers, infrequent workplace changes that are gradually introduced, and no production-paced work.  *Compare id.* at 24 (ALJ's decision), *with id.* at 728 (Dr. Brownfeld's opinion).  And contrary to Angela's argument, the fact that the RFC does not exactly mirror those opinions was not error, especially because the ALJ explained the reasons behind his decision in considerable detail.

With respect to Dr. Toor's opinion, for instance, the ALJ noted Angela's history of migraine headaches and that she began treating them with medication in September 2014.  *Id.* at 22.  The ALJ concluded, however, that Angela's migraines were a non-severe impairment that did not "cause any more than minimal, if any, limitations in [her] ability to perform basic physical and/or mental work-related functions lasting in duration for not less than 12 months."  *Id.*  Nevertheless, the ALJ noted that he considered all of Angela's non-severe impairments, including her migraines, in making the RFC determination.  *See id.*  What is more, Angela does not suggest any additional limitations that the ALJ should have included in the RFC to better account for Dr. Toor's findings.  *See Smith*, 740 F. App'x at 726.

As for Dr. Brownfeld's opinion that Angela had a moderate limitation in regulating emotions, controlling behavior, and maintaining well-being, the ALJ found that Angela was limited to the same degree.  *See* Docket Item 7 at 23.  Regulating emotions, controlling behavior, and maintaining well-being simply are descriptors of a claimant's ability to adapt or manage himself or herself.  *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00E(4).  The ALJ concluded that Angela was moderately limited in adapting or managing herself, and this determination was based in part on Dr. Brownfeld's opinion.  *See* Docket Item 7 at 23.

And the RFC accounted for the other limitations found by Dr. Brownfeld as well. The ALJ restricted Angela to: (1) performing simple, routine tasks[7] with only occasional interaction with the public and co-workers; (2) infrequent workplace changes that are gradually introduced; and (3) no production-paced work. *Id.* at 24. Such work restrictions are sufficient to address Angela's moderate limitations in her mental work-related functioning. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (affirming ALJ's decision that claimant could perform prior unskilled work where "[n]one of the clinicians who examined [the claimant] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (finding that moderate limitations in the four areas of mental work-related functioning are not inconsistent with a limitation to simple, unskilled work); *Mangual v. Comm'r of Soc. Sec.*, 600 F. Supp. 3d 313, 329 (S.D.N.Y. 2022) ("As a general matter, moderate limitations are not an impediment to the ability to perform gainful activity, particularly when an RFC has already limited a claimant to unskilled, routine work."). And again, Angela does not suggest how her RFC should have been more limited. *See Smith*, 740 F. App'x at 726.

So the ALJ adequately addressed the opinion evidence and explained the reasons behind an RFC that was largely grounded in that opinion evidence. The fact that the RFC may not have included all the limitations in the opinions was not error, and Angela's second argument fails as well.

---

[7] The restriction to simple, routine tasks also accounted for Dr. Brownfeld's finding of a marked limitation in applying complex directions and instructions. *See Zabala v. Astrue*, 595 F.3d 402, 405-07 (2d Cir. 2010) (claimant can perform unskilled work with a marked limitation in understanding, remembering, and carrying out complex instructions).

**CONCLUSION**

In sum, the ALJ properly assessed Angela's subjective complaints about her IBS as well as the opinions of Dr. Toor and Dr. Brownfeld, and the ALJ crafted an RFC consistent with that evidence. Angela's arguments boil down to a disagreement with the ALJ's weighing of the evidence, but it is "not the function of this Court to re-weigh evidence or consider *de novo* whether [Angela] is disabled." *Teena H. o/b/o N.I.K.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021); *see also Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."). Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence, and this Court will not second-guess it. *Matta*, 508 F. App'x at 56.

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Angela's motion for judgment on the pleadings, Docket Item 8, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 9, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated: August 7, 2023
Buffalo, New York

      */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE